## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

KENNETH W. DAVIS             §
                            §
VS.                         §          No. 5:22cv00031-RWS-JBB
                            §
COMMISSIONER OF SSA         §

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

On February 21, 2022, Kenneth W. Davis ("Plaintiff") initiated this civil action pursuant to the Social Security Act ("The Act"), Section 405(g) of Title 42 for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits.  The Court is of the opinion the above-entitled Social Security action should be **AFFIRMED**.

## HISTORY OF THE CASE

On December 17, 2019, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income, alleging he became disabled on November 1, 2019, due to arthritis, obesity, and "Weight Bearing Joints." (Dkt. No. 18 ("Tr.") at 61-62, 70-71, 82, 98, 255). Plaintiff's applications were denied initially and on reconsideration (Tr. 119-43). Pursuant to Plaintiff's request, an Administrative Law Judge ("ALJ") held a *de novo* administrative hearing on August 16, 2021 (Tr. 33-60). On August 27, 2021, the ALJ entered an unfavorable decision (Tr. 12-23). The Appeals Council denied Plaintiff's request for review on December 21, 2021 (Tr. 1-5), making the ALJ's decision the final decision of the Commissioner for judicial review under 42 U.S.C. § 405(g).

## STATEMENT OF THE FACTS

*Age, education, and work experience*

Plaintiff was born on October 10, 1970, was forty-nine years of age at his alleged onset date of disability, and was fifty years of age at the time of the hearing. (Tr. 21, 38). Plaintiff has a high school education and past work experience as a meat cutter and tire technician (Tr. 38, 40).

*Medical record evidence*

On February 9, 2019, Plaintiff presented to CHRISTUS St. Michael Health System indicating that his ankle was locking up (Tr. 374-79). Plaintiff further reported moderate pain in his lower back, right hip, lower right leg, and right ankle that was exacerbated by movement (Tr. 375). Plaintiff identified his symptoms as joint pain, joint swelling, and muscle pain. (Tr. 376). Plaintiff's medical history showed he previously had surgery on his right ankle and right knee (Tr. 376). On physical examination, Plaintiff's general appearance was listed as obese (Tr. 376). Additionally, there was mild edema and some tenderness in the right ankle (Tr. 377). Plaintiff had x-rays taken of the right ankle, lumbar spine, pelvis, and bilateral hips (Tr. 377, 387-89).

The right ankle films were compared to previous findings from 2012 (Tr. 387). Previous open reduction internal fixation ("ORIF") of the "distal tib-fib fractures" were again seen and were "well healed." (Tr. 387). The ankle films also revealed ankle joint degenerative changes without the presence of acute bony abnormalities (Tr. 377, 387). The lumbar spine films showed a decreased disc height space between the L2 and L3 vertebrae (Tr. 377). The impression was multilevel degenerative changes without cute osseous abnormalities (Tr. 388). The pelvis and bilateral hip films showed proper anatomic alignment with no acute bony abnormalities (Tr. 377, 389). Upon discharge, Plaintiff was prescribed Tramadol, Orphenadrine Citrate, and Diclofenac

for pain moderation and was instructed to rotate between ice and heat compresses for his lower back (Tr. 378).

Plaintiff was treated again at CHRISTUS St. Michael Health System on September 9, 2019, with urogenital problems (Tr. 354-59). Plaintiff represented he was suffering from pain in his "left flank" that had gradually worsened into moderate pain over the past day (Tr. 354). A physical examination performed by Kellie Flaherty, PA, indicated Plaintiff was experiencing tenderness in the left back quadrant (Tr. 356). Plaintiff received CT imaging of the abdomen and pelvis that revealed no acute findings (Tr. 357) (further noting there was "[i]ncidental duodenal jejunal and left colonic diverticula" and no acute diverticulitis). It was noted that Plaintiff had mild to moderate degenerative disc disease (Tr. 357). Plaintiff was discharged with a referral to Genesis PrimeCare (Tr. 358-59).

On February 20, 2020, Plaintiff established care at Genesis PrimeCare, complaining of right ankle pain and leg issues (Tr. 395). Plaintiff claimed his ankle would "lock up" while ambulating causing him to fall approximately every two to three days (Tr. 395). On examination, Stephanie Ford, FNPC, noted a knot on the medial side of Plaintiff's right ankle and that Plaintiff was morbidly obese (Tr. 396). Nurse Practitioner Ford recommended Plaintiff schedule an MRI, increase his frequency of exercising, and follow up for treatment as needed (Tr. 396).

Plaintiff had a follow-up MRI at CHRISTUS St. Michael Health System on March 12, 2020 (Tr. 398-99). The right ankle MRI was compared to February 9, 2019 findings, and the impression included degenerative joint disease as well as remote posttraumatic and postsurgical changes (Tr. 398-99).

On March 14, 2020, Plaintiff reported to EverMed Exams for a consultative examination by Aman Patel, D.O. (Tr. 411-18). Plaintiff alleged disability due to arthritis and obesity (Tr. 411).

According to Plaintiff, he fell from a ladder at work several years prior, followed by "extensive surgery of the right knee" and right ankle (Tr. 411). Plaintiff described his pain as "chronic dull ache, worsened with range [of] motion and relieved with rest and over-the-counter pain medication." (Tr. 411).

Plaintiff's strength tests indicate normal muscular strength for all major muscle groups except Plaintiff received a strength level of four out of five for right ankle plantar-flexion and right ankle dorsi-flexion (Tr. 414). Plaintiff's evaluation of joint motion indicated the full expected range of motion for all joints except for reductions in the range of motion of the right hip flexion, right knee flexion, right hip abduction, right ankle, and right ankle flexion (Tr. 417-18). A visual inspection of the right ankle showed "unchanged appearance . . . without radiographic evidence for acute osteoarticular pathology." (Tr. 415).

Diagnoses included chronic right ankle pain secondary to postsurgical posttraumatic arthritis; chronic right knee pain secondary to posttraumatic postsurgical arthritis; and morbid obesity because of persistent pain in the ankle and the knee (Tr. 415-16). Dr. Patel further noted as follows:

> There are no limitations with sitting. There are limitations with standing due to right knee pain and walking due to right knee pain. The claimant does not need an assistive device with regards to short and long distances and uneven terrain. There are limitations with lifting due to right knee pain. There are limitations with carrying weight due to right knee pain. There are limitations on bending and stopping due to right knee pain. There are limitations on crouching and squatting due to right knee pain. There are no limitations with reaching, grasping, handling, fingering, and feeling. There are no relevant visual or communicative limitations. There are relevant workplace environmental limitations due to right knee pain.

(Tr. 416).

On July 8, 2020, Plaintiff reported to CHRISTIUS St. Michael Orthopedic Clinic for a medical consultation with Harold Weems, M.D. (Tr. 422-28). Plaintiff indicated he suffered from

right ankle pain and swelling similar to previous claims stated within the record (Tr. 425-26). X-rays showed advanced arthritic disease of the ankle joint with osteophytes noted throughout (Tr. 425). Plaintiff received an 80 mg injection of Depo-Medrol directly in the ankle and was prescribed Meloxicam for inflammation (Tr. 425). Plaintiff was instructed to follow up in six weeks (Tr. 423, 425).

Plaintiff returned on August 19, 2020, for his follow up visit (Tr. 422-23). Plaintiff reported the injection treatment only provided pain relief for about one day before symptoms returned (Tr. 423). In his assessment/plan, Dr. Weems noted Plaintiff had "fairly advanced arthritic disease of the right ankle." (Tr. 423). Dr. Weems discussed several options, noting a total joint arthroplasty would not likely be an option due to Plaintiff's young age, weight, and physical activity level (Tr. 423). According to Dr. Weems, Plaintiff would need an additional form of financial assistance or Medicaid for referral to a foot and ankle specialist (Tr. 423). Dr. Weems switched Plaintiff's anti-inflammatory medication (Tr. 423-24).

Plaintiff's next medical visit was to the CHRISTUS Health Ark-La-Tex emergency room on September 7, 2020 (Tr. 471-73). Plaintiff reported that his knee "gave way" while pulling a wagon at home earlier that morning and that his leg pain had increased ever since (Tr. 471). A physical examination indicated that Plaintiff was unable to bear weight on his hip and that his right ankle and knee were tender (Tr. 473). X-ray of the ankle showed moderate secondary osteoarthrosis, but there were no acute fractures or subluxations (Tr. 476-77). X-ray of the knee showed multilevel hardware fixation of the distal right femur, distal right fibular diaphysis, and distal right tibial diametaphysis; no peri-hardware fracture or lucency (Tr. 478-81). Plaintiff indicated his condition had improved roughly three and a half hours after being initially seen by the medical provider and was subsequently released for home self-care (Tr. 473-74).

Plaintiff presented to Collom & Carney Clinic on September 30, 2020, with similar complaints of ankle and knee pain (Tr. 438-39). A physical examination indicated that Plaintiff was unable to fully extend or flex past 90 degrees with his right knee and that he was "exquisitely tender throughout the knee." (Tr. 438). Examination of the ankle showed extreme tenderness with tibiotalar motion and tenderness over the medial and lateral joint line with well-healed previously placed incisions (Tr. 438). Darius F. Mitchell, M.D., indicated Plaintiff needed to be referred to UAMS for a fusion of his ankle and possibly a total joint replacement (Tr. 438-39). Plaintiff was prescribed Norco for pain management with instructions to take them routinely "as needed" for pain (Tr. 439).

## **THE HEARING**

### *Plaintiff's testimony*

During the hearing, Plaintiff testified that he was fifty years old, has a high school education, and last worked on November 1, 2019 (Tr. 38-39). Plaintiff stated he is unable to work due to his leg "locking up," which prevents him from standing on it while working (Tr. 39). Plaintiff further elaborated that his issues are specifically with his right ankle and right knee swelling (Tr. 43). He testified that he had previous reconstruction surgery done on his knee (Tr. 45).

Plaintiff testified that prior to his injury he was employed as a meat cutter and a tire technician (Tr. 41-43). Plaintiff stated his duties as a meat cutter were to load and move cases of whole beef that averaged forty pounds (Tr. 41-42). Plaintiff further testified that his meat cutter job required him to be on his feet for most of the day (Tr. 42). Plaintiff testified his duties as a tire technician required him to lift tire rims that could weigh up to about twenty pounds (Tr. 42).

Plaintiff testified that the swelling has been an issue every day since he stopped working, and his current forms of treatment are limited to using ice compresses, heat compresses, and taking ibuprofen (Tr. 43). He noted that he experiences daily swelling in his ankle and knee while sitting in a recliner and while standing, but the swelling is worse when standing (Tr. 44). Plaintiff represented that, on an average day, he is able to stand for ten to fifteen minutes or walk on a flat surface for fifteen minutes before needing to sit down (Tr. 44). Plaintiff further stated that he has to get up and move around after fifteen to twenty minutes of sitting because his foot starts going numb (Tr. 45). According to Plaintiff, he spends at least three to four hours per day reclining his foot on a pillow (Tr. 48).

Plaintiff testified that he has issues managing the porch steps at his home and had to install additional support rails to assist him with climbing the steps (Tr. 46). He also testified that he sometimes uses a walking stick to move around his house (Tr. 46). According to Plaintiff, he only uses crutches when his leg locks up or if his wife is not present to help him (Tr. 47). Plaintiff also claimed he has difficulty sleeping at night due to pain and his ankle "feeling like it's locking up" when he tries to turn over (Tr. 47). Plaintiff stated that he can lift and carry five to ten pounds without causing more pain (Tr. 47). Regarding household chores, Plaintiff testified he can sweep for a few minutes, but his wife takes care of most of the chores and does the cooking (Tr. 49).

Plaintiff testified he has not had any treatment in the past year because of his lack of insurance (Tr. 40). He also testified that he has lower back problems that have not been treated (Tr. 49-50). Plaintiff further testified that he has been relying on his mother, a registered nurse, for treatment advice in lieu of hospital care (Tr. 40-41, 47).

### *Vocational expert testimony*

A vocational expert also testified at the hearing. The vocational expert characterized Plaintiff's past work as follows: (1) meat cutter: SVP 6, heavy exertional level; and (2) tire mechanic: SVP 3, heavy exertional level (Tr. 52).

The ALJ asked the vocational expert to assume a hypothetical individual of Plaintiff's same age, education, and work experience who is limited to lifting and carrying twenty pounds occasionally and ten pounds frequently; can stand and/or walk for approximately four hours and can sit for approximately six hours in an eight-hour workday with normal breaks; can occasionally use stairs and ramps, but cannot climb ladders, ropes and scaffolds; can occasionally stoop, kneel, crouch, crawl and balance; cannot ambulate over uneven surfaces; and cannot have concentrated exposure to moving mechanical parts and high exposed workplace hazards (Tr. 53-54). According to the vocational expert, the hypothetical person would not be able to do any of Plaintiff's past work (Tr. 54). However, there are occupations within the light range of activity – such as electronics worker, information clerk, or office helper – that the hypothetical person could perform (Tr. 54-55).

The ALJ then asked the vocational expert to further limit the hypothetical individual to standing and walking for approximately two hours (Tr. 55). According to the vocational expert, only the electronics worker and information clerk jobs would remain (Tr. 55). Further assuming the hypothetical individual would be off task for any reason, including having to elevate the leg outside of breaks, the vocational expert explained that "anything in excess of five percent per day on an ongoing basis would put the job at severe jeopardy." (Tr. 54-55).

In response to questioning by Plaintiff's attorney, the vocational expert testified that the electronics worker and information clerk jobs are both performed "predominantly seated." (Tr. 56)

(further stating there is typically an allowance to change position at the workstation as needed). If the vocational expert were to assume the hypothetical individual could only lift and carry no more than ten pounds in addition to standing and walking for only two hours per workday, this would "default the hypothetical into the sedentary range and those jobs would be eliminated." (Tr. 57). Additionally, if the hypothetical individual were to be absent more than two times per month, there would be no competitive work available (Tr. 57-58).

## APPLICABLE LAW

### *Standard of review*

In an appeal under § 405(g), the Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995), and conflicts in the evidence are resolved by the Commissioner, *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).

### *Entitlement to benefits*

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *Plaisance v. U.S. Comm'r, SSA*, No. 6:18-CV-00033, 2019 WL 2608884, at *14 (W.D. La. May 13, 2019), *report and recommendation adopted sub nom. Plaisance v. U.S. Comm'r*, No. 6:18-CV-00033, 2019 WL 2607498 (W.D. La. June 25, 2019) (citing 42 U.S.C. §

423(a)). The Supplemental Security Income ("SSI") program provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. *Plaisance*, 2019 WL 2608884, at *14 (citing 42 U.S.C. § 1382(a)(1) & (2)).

A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Plaisance*, 2019 WL 2608884, at *14 (citing 42 U.S.C. § 1382(c)(a)(3)(A)). A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. *Plaisance*, 2019 WL 2608884, at *14 (citing 42 U.S.C. § 1382(c)(a)(3)(B)).

### *Sequential evaluation process and burden of proof*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (2012). First, a claimant who, at the time of his disability claim, is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) (2012). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(a)(4)(ii) (2012). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1 (2011). 20 C.F.R. § 404.1520(a)(4)(iii) (2012). Fourth, a claimant

with a severe impairment that does not correspond to a listed impairment is not considered disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(a)(4)(iv) (2012). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If, at any step, the claimant is determined to be disabled or not disabled, the inquiry is terminated. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing *Lovelace v. Bowen,* 813 F.2d 55, 58 (5th Cir. 1987)).

Under the first four steps of the sequential analysis, the burden lies with the claimant to prove disability.  *Audler,* 501 F.3d at 448. If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical–Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen,* 810 F.2d 1296, 1304 (5th Cir. 1987). However, this process is used only when an initial determination of disability is being evaluated, not when a claimant is already receiving disability benefits. *See* 20 C.F.R. § 404.1520(a)(5). The Code explicitly states, "If you are already receiving disability benefits, we will use a different sequential evaluation process to decide whether you continue to be disabled. We explain this process in § 404.1594(f)." *Id*.

## <u>THE ALJ'S FINDINGS AND CONCLUSIONS</u>

Having considered the evidence and applying the five-step sequential evaluation process, the ALJ first found Plaintiff met the insured status requirements of the Act through December 31, 2024 (Tr. 14). At step one, the ALJ found Plaintiff did not engage in substantial gainful activity from his alleged onset date (Tr. 14). At step two, the ALJ found Plaintiff has the severe

impairments of right ankle post-traumatic osteoarthritis, status post open-reduction and internal-fixation (ORIF) surgical repair; right knee osteoarthritis; obesity; and lumbar degenerative disc disease (Tr. 15). At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 15-16).

The ALJ next found that Plaintiff has the residual functional capacity to perform light work with the following limitations: the claimant can lift and carry twenty pounds occasionally and ten pounds frequently; he can stand and/or walk for approximately two hours and sit for approximately six hours, in an eight-hour workday, with normal breaks; the claimant cannot climb ladders, ropes, and scaffolds and can occasionally climb stairs and ramps; the claimant can occasionally stoop, crouch, kneel, crawl, and balance, as defined by the Selective Characteristics of Occupations of the Dictionary of Occupational Titles (SCO-DOT); the claimant should have no concentrated exposure to moving mechanical parts and high, exposed place hazards, as rated by the SCO-DOT; and he cannot ambulate over uneven surfaces (Tr. 16-21). At step four, the ALJ found that Plaintiff cannot perform his past relevant work (Tr. 21).

At step five, relying on the vocational expert's testimony, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform other work existing in significant numbers in the national economy (Tr. 22). Specifically, the ALJ concluded that Plaintiff could perform the representative jobs of information clerk and electronics worker (Tr. 22). The ALJ concluded that Plaintiff has not been under a disability, as defined in the Act, from November 1, 2019, through August 27, 2021, the date of the ALJ's decision (Tr. 23).

## ANALYSIS

"The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Substantial evidence is a term of art used to describe how courts are to review agency fact finding. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Under the substantial-evidence standard, a court looks to the existing administrative record to determine whether it contains sufficient evidence to support the agency's factual determinations. *Id.* Although "substantial" has a different meaning in other contexts, the threshold of sufficient evidence to satisfy the substantial evidence standard "is not high." *Id.* Substantial evidence requires more than a mere scintilla of evidence, but it "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, a claimant also bears the burden of showing any alleged error of law was prejudicial because the Supreme Court has recognized the doctrine of harmless error applies to administrative determinations, and the Fifth Circuit has specifically held it will not vacate a judgment unless the substantial rights of a party are affected. *See Shinseki v. Sanders*, 556 U.S. 396, 407-08 (2009); *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

The overarching issues are whether substantial evidence of record supports the Commissioner's decision that Plaintiff was not disabled during the relevant period, and whether

the ALJ applied the correct legal standards in reaching that decision. Having reviewed the parties' briefs, Plaintiff identifies the following specific issues on appeal: (1) whether substantial evidence and relevant legal standards support the ALJ's residual functional capacity assessment and subsequent step-five determination that Plaintiff can perform a modified range of light work; and (2) whether the ALJ and Appeals Council judges were properly appointed and therefore have authority to adjudicate this case. Dkt. No. 15 at 1. Specifically, Plaintiff argues as follows:

> [] The ALJ's own RFC findings limit Mr. Davis to sedentary work which would require a determination of disability under the Agency's grid rules. Specifically, the ALJ determined that Mr. Davis had the capacity to perform work at the light exertional level yet found that he could only stand and/or walk for approximately two hours in an eight-hour workday which is actually consistent with the sedentary exertional level, not the light. Therefore, because the ALJ's own RFC findings limit Plaintiff to sedentary work, a determination of disability under the Agency's grid rules is required.

> [] The ALJ and Appeals Council judges in this case were not properly appointed, and therefore had no legal authority to adjudicate this case. Therefore, because the ALJ and Appeals Council judges in this case had no legal authority to adjudicate this case, remand for further proceedings is required.

*Id.* at 3.

The Court first addresses whether the ALJ and Appeals Council had legal authority to adjudicate this case. The Federal Vacancies Reform Act of 1998 ("FVRA"), 5 U.S.C. § 3345–3349d, permits certain individuals to serve temporarily in "principal officer" positions which normally require Presidential nomination and Senate confirmation. The FVRA allows the "first assistant" to the principal officer to serve in an acting capacity or "the President (and only the President) may direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity. . . ." 5 U.S.C. § 3345(a). Section § 3346(a) places time limitations on individuals serving under § 3345:

> [T]he person serving as an acting officer as described under section 3345 may serve in the office–

(1) for no longer than 210 days beginning on the date the vacancy occurs; or

(2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

*Dahle v. Kijakazi*, 62 F.4th 424, 426 (8th Cir. 2023).

Plaintiff asserts the ALJ and Appeals Council members were not properly appointed by former Acting Commissioner Nancy Berryhill, who began service on January 20, 2017, nor by any subsequent Commissioner or Acting Commissioner. Dkt. No. 15 at 12. According to Plaintiff, under the FVRA, Berryhill's term as Acting Commissioner ended 210 days later on November 16, 2017; yet, Berryhill served as Acting Commissioner of SSA until Andrew Saul became Commissioner of SSA on June 17, 2019, which exceeded the statutory limit of 210 days. *Id.* On July 16, 2018, Berryhill purported to properly appoint SSA's ALJ's and Appeals Council judges. *Id.* (citing SSR 19-1p, 2019 WL 1324866). Plaintiff argues "these faux appointments occurred more than 210 days after Ms. Berryhill became Acting Commissioner," and thus, she no longer had any legal authority as Acting Commissioner under the FVRA to make such appointments. *Id.* (stating Berryhill's continuing as the head of SSA after November 16, 2017 violated both the FVRA and the Constitution's Appointments Clause and further stating that her actions after that date had no legal validity). Arguing no acting or permanent Commissioner of SSA has since that time claimed to have properly appointed ALJs and Appeals Council judges, Plaintiff asserts they had no legal authority to adjudicate this disability application and the case must be remanded for a new hearing. *Id.* at 12-13 (citing *Brian T. D. v. Kijakazi*, 580 F. Supp. 3d 615, 617 (D. Minn. 2022), *rev'd and remanded sub nom. Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023); also citing *Richard J.M. v. Kijakazi*, 2022 WL 959914 (D. Minn. Mar. 30, 2022)).

The Eighth Circuit Court of Appeals recently reversed the primary case relied upon by Plaintiff and specifically held that Berryhill was properly serving as Acting Commissioner when she ratified the appointment of the SSA ALJs. *Dahle v. Kijakazi*, 62 F.4th 424, 429 (8th Cir. 2023). A court within the Fifth Circuit has noted that while not bound by the Eighth Circuit, "various district courts within the Fifth Circuit have unanimously followed its reasoning." *Porter v. Commissioner, Soc. Sec. Admin.*, No. 4:22-CV-0096-P, 2023 WL 2730658, at *2 (N.D. Tex. Mar. 31, 2023) (citing *Tamara G. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-631-D-BK, 2023 WL 2504912, at *4–5 (N.D. Tex. Feb. 13, 2023); *Spain v. Soc. Sec. Admin.*, No. 21-2367, 2023 WL 1786722, at *4–7 (E.D. La. Jan. 18, 2023); *Boller v. Comm'r, SSA*, No. 4:21-CV-01001-SDJ-CAN, 2022 WL 18586837, at *7 (E.D. Tex. Dec. 12, 2022); *Watts v. Kijakazi*, No. 21-2044, 2022 WL 18109797, at *10–15 (E.D. La. Nov. 18, 2022); *Silva v. Kijakazi*, No. 2:21-CV-00301, 2022 WL 18144262, at *6–7 (S.D. Tex. Oct. 5, 2022)). The *Porter* court followed the same reasoning and likewise concluded that Berryhill had proper statutory authority under the FVRA to ratify the appointment of the ALJ in this case. *Id.* More recently, the Fourth Circuit Court of Appeals has agreed with the Eighth Circuit and held that Berryhill was properly serving as Acting Commissioner when she ratified the ALJs' appointments. *Rush v. Kijakazi*, 65 F.4th 114, 124 (4th Cir. 2023).

Similarly here, and for the reasons expressed by both the Fourth and Eighth Circuits, the Court concludes Berryhill was properly serving as SSA Acting Commissioner when she ratified the appointment of the ALJ in this case. *See id.* ("[T]he statutory text is clear: An acting officer may serve while a nomination is pending in accordance with § 3346(a)(2) regardless of whether her [210-day period of] service under § 3346(a)(1) expired before the nomination was submitted."). Finding Plaintiff's argument to the contrary without merit, the Court considers

Plaintiff's remaining substantive argument regarding the ALJ's residual functional capacity assessment and subsequent step-five determination that Plaintiff can perform a modified range of light work.

Residual functional capacity is defined as the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An individual's residual functional capacity should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. 20 C.F.R. § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1.

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ may find that a claimant has no limitation or restriction as to a functional capacity when there is no allegation of a physical or mental limitation or restriction regarding that capacity, and no information in the record indicates that such a limitation or restriction exists. See SSR 96-8p, 1996 WL 374184, at *1. The ALJ's residual functional capacity decision can be supported by substantial evidence even if he does not specifically discuss all the evidence that supports his decision or all the evidence that she rejected. *Falco v. Shalala*, 27 F.3d 16, 164 (5th Cir. 1994).

As noted above, the ALJ determined Plaintiff has the residual functional capacity to perform light work with certain limitations, including lifting and carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking for approximately two hours and sitting for approximately six hours in an eight-hour workday. Plaintiff does not argue that the ALJ's residual functional capacity assessment was unsupported or incorrect. Rather, Plaintiff

argues the functional limitations in the ALJ's residual functional capacity assessment (limiting Plaintiff to two hours of standing and/or walking in an eight-hour workday) are consistent with sedentary, and not light, work. Dkt. No. 15 at 5. Plaintiff further asserts the evidence presented by the vocational expert is inconsistent with the controlling definition of light work. *Id.* at 7. Plaintiff argues that the ALJ was required to apply the Grid rule for sedentary work, and on that basis should have found that Plaintiff was disabled.

As noted by Plaintiff, several courts have deemed "inherently contradictory" or "incongruent" the finding that a claimant can somehow do light work despite being limited to two hours of standing/walking, which is instead consistent with sedentary work. *Oropeza-Hernanez v. Kijakazi*, No. 7:22-CV-0230, 2023 WL 2575838, at *5 (S.D. Tex. Feb. 15, 2023), *report and recommendation adopted sub nom. Oropeza-Hernandez v. Kijakazi*, No. 7:22-CV-230, 2023 WL 2574986 (S.D. Tex. Mar. 20, 2023) (citing *Wilkerson v. Comm'r of Soc. Sec.*, 278 F. Supp. 3d 956, 971 (E.D. Mich. 2017); *Villareal v. Colvin*, 221 F. Supp. 3d 835, 847-51 (W.D. Tex. 2016); *McClure v. Comm'r of Soc. Sec.*, 2016 WL 4628049, at *5-7 (S.D. Cal. Aug. 9, 2016); *Ferdin v. Colvin*, 2015 WL 7767980, at *11 (W.D. Tex. July 30, 2015); *Campbell v. Astrue*, 2010 WL 4689521, at *5 (E.D. Pa. Nov. 2, 2010)). Nevertheless, Plaintiff's argument is unpersuasive.

As urged by the Commissioner, other courts have expressly rejected the claim that a claimant cannot perform light work because he is limited to standing/walking for two hours of an eight-hour work–day. Dkt. No. 18 at 20-21 (citing, among other cases, *Nino v. Berryhill*, No. 4:17-CV-100-A, 2018 WL 889454, at *6 (N.D. Tex. Jan. 29, 2018) (citing cases for support) ("Nino's position that his inability to perform the full range of light work because he is limited to standing and walking for two hours in an eight-hour workday and, thus, should have been given an RFC limited to sedentary work has been rejected on multiple occasions."), *report and recommendation*

*adopted*, 2018 WL 895601 (N.D. Tex. Feb. 13, 2018)). A court within the Fifth Circuit recently

explained as follows:

> Contrary to Plaintiff's assertions, the ALJ's decision to elicit testimony from the VE, rather than apply the sedentary exertion level Grid rule," is consistent with Agency policy. *See* SSR 83-12, 1983 WL 31253, at *1 (Jan. 1, 1983). SSR 83-12 provides guidance for disability determinations where an "exertional level falls between two rules which direct opposite conclusions i.e., 'Not disabled' at the higher exertional level and 'Disabled' at the lower exertional level." *Id.* at *2. In cases where an exertional level is only slightly reduced, an ALJ may justifiably conclude that a claimant is not disabled. *Id.* But where an "individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability." *Id.* at *3. In such cases, adjudicators are advised to obtain the assistance of a VE. *Id.*
>
> Further, the Fifth Circuit has found that a claimant may only be able to perform a limited range of work within an exertional level and still have the RFC to perform work at that exertional level. *See, e.g., Landfried v. Apfel*, 218 F.3d 743, 2000 WL 821361, at *3 (5th Cir. 2000) (unpublished). In *Landfried*, as in this case, the ALJ found that although the claimant would be limited to "standing/walking two of eight work day hours" she nevertheless had an RFC for a modified range of light work. *Id.* The court affirmed the Commissioner's decision, finding that sufficient medical evidence supported the conclusion limiting the claimant to a modified range of light work. *Id.*
>
> Also relevant to this case, the Fifth Circuit rejected the argument that an administrative determination that the claimant had the RFC for sedentary work precluded a subsequent determination that the claimant was capable of a modified range of light work. *Id.* at *2. The court noted that "[a] finding that [the claimant] has the residual functional capacity for sedentary work is not tantamount to a finding that [the claimant] does not have the residual functional capacity for a modified range of light work." *Id.* at *2 (citing *Houston v. Sullivan*, 895 F.2d 1012, 1015–16 (5th Cir. 1989)).

*Milton L. C. v. Saul*, No. 1:20-CV-00113-H-BU, 2021 WL 3518532, at *6 (N.D. Tex. July 23,

2021), *report and recommendation adopted*, No. 1:20-CV-113-H-BU, 2021 WL 3516244 (N.D.

Tex. Aug. 10, 2021).

In another case within the Fifth Circuit, the court found the ALJ's determination that the

claimant had the residual functional capacity to perform light work was supported by substantial

evidence, despite the fact that the RFC limited the claimant to two hours of standing per day. *Kathryn G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-021-BQ, 2020 WL 5520657, at *4 (N.D. Tex. Aug. 20, 2020) (collecting cases), *report and recommendation adopted sub nom. Kathryn G. v. Saul*, No. 5:20-CV-021-C-BQ, 2020 WL 5514394 (N.D. Tex. Sept. 14, 2020). The court noted that, under Agency policy, "[a]n ALJ may rely on VE testimony where, as here, the claimant's ability to perform substantially all the requirements of light work was affected by additional limitations." *Id.* (citations and internal quotation marks omitted).

Similarly, in *Nino v. Berryhill*, a case relied upon by the Commissioner, the ALJ determined that the claimant was capable of performing occupations at the light exertional level despite also finding an RFC limiting the claimant to two hours of standing or walking. *Nino v. Berryhill*, No. 4:17-CV-100-A, 2018 WL 889454, at *5 (N.D. Tex. Jan. 29, 2018), *report and recommendation adopted*, No. 4:17-CV-100-A, 2018 WL 895601 (N.D. Tex. Feb. 13, 2018). The court affirmed the Commissioner's decision, finding that the residual functional capacity assessment and step five determination were consistent with Agency policy and supported by substantial evidence, where the ALJ relied on evidence in the record and VE testimony. *Id.* at *7.

Plaintiff contends the ALJ violated POMS DI 25025.015(D) because she did not provide an explanation in the decision for which Medical-Vocational Guideline Rule she applied and because she did not seek the specific input of a vocational expert regarding which Grid rule (202.14 versus 201.14) most closely approximated the residual functional capacity and vocation factors. Dkt. No. 15 at 10-11. According to the Commissioner, the POMS provision Plaintiff cites explains that situations where the claimant's exertional capacity falls between rules requiring different conclusions involves "more difficult judgment" and that the adjudicator may apply the lower rule if the adjudicator concludes that "the claimant has a significantly reduced capacity for the higher

level of exertion." Dkt. No. 18 at 21 (quoting POMS DI 25015.015(D)). Moreover, "[w]here the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource," and vocational assistance is advisable for cases where the claimant's exertional limitations are "somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work." *Id*. at 21-22 (quoting SSR 83-12, 1983 WL 31253, at *2-3).

Here, the ALJ explained in her decision that she considered Medical-Vocational Guideline Rules 202.21 and 202.14, but because Plaintiff's ability to perform all or substantially all of light work had been impeded, the ALJ obtained vocational expert testimony to determine the extent of erosion of the occupational base for light work (Tr. 22). As in *Milton*, because the ALJ found that Plaintiff's ability to perform the full range of light work was impeded, the ALJ properly relied on vocational expert testimony to determine the extent to which Plaintiff's impairments reduced the light work occupational base. The vocational expert specifically considered and testified concerning light level occupations that accounted for Plaintiff's limited standing and walking (Tr. 55). The vocational expert testified that an individual with Plaintiff's residual functional capacity would be able to perform the requirements of two occupations at the light exertion level, including electronics worker and information clerk (Tr. 55). On that basis, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 23). The ALJ's RFC and subsequent step-five determinations do not contradict Agency regulations as Plaintiff claims. *Kathryn G.*, 2020 WL 5520657, at *5.

Furthermore, even if the ALJ erred in not following the specific procedural requirements or the POMS, the ALJ's error warrants remand only if Plaintiff was prejudiced by the error. *Nino*, 2018 WL 889454, at *7 (citing *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *Bornette v.*

*Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (violation of a ruling is procedural error warranting reversal "only when [the] complainant affirmatively demonstrates ensuant prejudice")). Plaintiff has not met his burden of showing prejudice here. As discussed, during the administrative hearing, Plaintiff's former attorney thoroughly questioned the vocational expert regarding an individual's ability to perform the electronics worker and information clerk positions with a limitation to standing/walking two hours, and the vocational expert confirmed that both positions were predominantly seated jobs but were classified as light work because of the lifting requirements (Tr. 56). Here, as in *Nino*, the ALJ  "clearly considered and rejected Plaintiff's argument that he was capable of only performing sedentary work and substantial evidence supports the ALJ's RFC determination as well as his determination at Step Five." *Id.*

In sum,  the undersigned finds that both the ALJ's residual functional capacity assessment and subsequent step-five determination that Plaintiff can perform a modified range of light work were made without legal error and are supported by substantial evidence. *See Milton*, 2021 WL 3518532, at *7; *see also Kathryn G.*, 2020 WL 5520657, at *5.

## **RECOMMENDATION**

"The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot fund substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Legget v. Chater*, 67 F.3d 558, 565-66 (5th Cir. 1995). Having reviewed the record, the Court determines the record shows that the Administration correctly applied the applicable legal standards and that substantial evidence supports the Administration's determination that Plaintiff is not disabled. Accordingly, it is

**RECOMMENDED** the above-entitled Social Security action be **AFFIRMED.**

<u>Objections</u>

Within fourteen (14) days after service of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court, except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriquez v. Bowen*, 857 F.2d 275, 267-77 (5th Cir. 1988).

SIGNED this the 2nd day of August, 2023.

J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE